# IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF VIRGINIA

**Alexandria Division**

FILED

MAR - 1 2018

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

|  |  |  |
|---|---|---|
| Matthew Wayne Wiland, | ) | |
| Petitioner, | ) | |
|  | ) | |
| v. | ) | 1:17cv476 (AJT/JFA) |
|  | ) | |
| Harold W. Clarke, | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

Matthew Wayne Wiland, a Virginia inmate proceeding pro se, has filed a petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his
convictions in the Circuit Court for the City of Fredericksburg. Respondent filed a Motion to
Dismiss and Rule 5 Answer, along with a supporting brief and exhibits. Petitioner was given the
opportunity to file responsive materials, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.
1975) and Local Rule 7K. Petitioner filed a response. The matter is now ripe for disposition.
For the reasons that follow, respondent's Motion to Dismiss will be granted, and the petition will
be dismissed with prejudice.

## I. Background

The record reflects the following. Petitioner is detained pursuant to a final judgment of
the Circuit Court of the City of Fredericksburg, entered December 13, 2013. Mot. to Dismiss at
Ex. A. Petitioner was convicted by a jury of three counts of use or display of a firearm in the
commission of a felony, in violation of Virginia Code § 18.2-53.1, one count of conspiracy to
commit armed burglary, in violation of Virginia Code § 18.2-89, one count of armed statutory
burglary, in violation of Virginia Code § 18.2-90, three counts of robbery, in violation of
Virginia Code § 18.2-58, and three counts of conspiracy to commit robbery, in violation of

Virginia Code § 18.2-58. Id. Petitioner was sentenced to forty-eight (48) years and fifty-one (51) days imprisonment, with no time suspended. Id.

Petitioner pursued a direct appeal to the Court of Appeals of Virginia, which was denied on October 8, 2014, and December 15, 2014. Id. at Ex. B. On direct appeal, the Court of Appeals of Virginia stated the facts as follows.

> [Petitioner] was convicted of multiple felonies arising out of an incident on May 7, 2012, in which he and two others entered a home with a shotgun, held the occupants at gunpoint, and robbed them.
>
> ***
>
> [Petitioner] defended the charges against him by maintaining he acted under duress because he felt threatened by his companion[s][1] ... at the time he entered the victims' home and committed the offenses.

Record No. 2451-13-2 (footnote added). One of the victims of the robbery was Dylan Evans. Id. The Supreme Court of Virginia subsequently refused the petition for appeal on June 29, 2015. Mot. to Dismiss at Ex. C.

During the trial, prior to beginning his opening statement, petitioner's trial counsel asked for a bench conference at which the following exchange, in relevant part, occurred.

> Trial Counsel: Let me proffer to the Court that the -- our defense theory of the case is that the two [perpetrators] knew that Mr. Evans was distributing marijuana and a form of ecstacy [sic] known as molly, that and there's going to be evidence presented during our case in chief that [petitioner] had obtained these kind of drugs for them before and that they knew that it was coming from Mr. Evans. And that Mr. -- this is the first time that they had a chance to go to the home of Mr. Evans and that they decided to use that opportunity to rob Mr. Evans without the knowledge of [petitioner] beforehand.
>
> ***

---

[1] Petitioner's companions, also referred to as the perpetrators, were John Richardson and Richardson's cousin.

2

Trial Court: But why would that matter? Why would the motive of [the perpetrators] --

Trial Counsel: Right. Because the evidence is going to be that [petitioner] was contacted by the [perpetrators] to purchase a half-ounce of marijuana from Mr. Wood and that, in setting up the meeting with Mr. Wood, he said to the [perpetrators] we're going to -- they were giving him a ride and that we're going to go over to the house of Dylan Evans and wait for him there.

And the [perpetrators], at that time, had known that Mr. Evans was, you know , a dealer and that they had purchased from him before through [petitioner] and had every reason to believe that Mr. Evans had the drugs that they were looking for. They're saying, where is the stuff -- you know, that was a statement that was revealed in discovery -- and that they used the opportunity to go to the home of Mr. Evans and to rob him at that time. It also and it's part of our-- you know, the facts that we're going to show that [petitioner] did not have any prior knowledge that they were going to rob these people.

Trial Court: Well, that's the definition for -- I mean, how was your client going to testify to the motive of the [perpetrators]? I mean, he can testify as to why he went.

Trial Court: Right. He can't say what the motive of the [perpetrators] was, but he can say that he knew that they knew that the –

Trial Court: (interjecting) Your client can testify about why he went.

Trial Counsel: Right. And he can also testify that the two -- the [perpetrators] -- one of them anyway -- knew that [petitioner] had obtained these drugs from Mr. Evans before for him -- for the [perpetrator] in the past.

Trial Court: How can he testify as to what's in another's mind?

***

Trial Counsel: That was the [perpetrators'] motive to rob without –

Trial Court: (interjecting) But your client can't testify as to what someone else's motive was.

Trial Counsel: Right. I know he can't testify to the motive, but I can argue it after presenting the facts.

3

Trial Court: Okay. Well, I think it will all depend on what the evidence is. I'll allow you to make your opening statement, but I'm telling you, [trial counsel], I would caution you that if you make an opening statement --

Trial Counsel: I know.

Trial Court: -- and you don't meet the --

Trial Counsel: I know.

Trial Court: All right. It's going to be to his detriment.

Trial Counsel: I understand. I understand.

Trial Court: You understand that?

Trial Counsel: Yes, sir.

Trial Court: And I'll make my ruling on the evidence as it's presented.

Commonwealth v. Wiland, CR12001571-00.

After pursuing his direct appeal, petitioner timely filed a petition for a writ of habeas corpus in the Supreme Court of Virginia on June 20, 2016. Mot. to Dismiss at Ex. D. The Supreme Court of Virginia stated the facts, as related to trial counsel's performance, as follows.

The record, including the trial transcript, demonstrates that, outside the presence of the jury, counsel sought permission to tell the jury during his opening statement that petitioner had obtained drugs from the victims in the past and planned to do so on the night of the crimes. Counsel also said he would tell the jury petitioner had gone to the victims' home with the perpetrators to obtain drugs, but the perpetrators used the opportunity to rob the victims and petitioner participated in the robbery under duress because he had been threatened. It was during this bench conference that counsel made the statement petitioner attributes to counsel's opening statement, that "the actual perpetrator's intent would become apparent and [petitioner's] culpability would be diminished." Petitioner does not identify any evidence counsel promised in his opening statement to the jury he would present that counsel then failed to present at trial.

During counsel's opening statement, counsel did tell the jury petitioner did not know the perpetrators planned to commit a robbery and that he had been told by them to "cooperate ... not to do anything stupid or you're going to get hurt." Counsel also said petitioner "was told [by the robbers] we know where your

4

mother lives." Counsel also told the jury during opening statement that it would hear evidence that Danny Wood, from whom petitioner had planned to purchase drugs later that night for John Richardson and his cousin, planned to rob petitioner during the transaction and that Wood had solicited the assistance of Dylan Evans, one of the victims petitioner was accused of robbing. Counsel told the jury Evans had agreed to help Woods [sic]. This proffer was supported by Woods [sic] statement to police, in which he admitted his plan and stated Evans had agreed to "have his back" during the robbery.

At trial, Evans testified Wood planned to rob petitioner and solicited his help, but denied he had agreed to assist. At trial, petitioner testified that Richardson asked petitioner for help in obtaining marijuana for Richardson and Richardson's cousin. Petitioner testified Richardson and his cousin accompanied petitioner to the victims' home to buy the drugs. Petitioner testified Richardson shoved petitioner into the house, and petitioner then noticed Richardson's cousin had a shotgun. Petitioner testified he felt threatened, he felt his life was in danger, he feared for the safety of his mother and sister, and he was pressured to follow Richardson's instructions.

During closing argument, in reference to his opening statement, counsel said "some of the things that I promised that you were going to hear, you didn't." Counsel did not describe the specific statements to which he was referring, but noted that some of the witnesses did not testify as expected and their testimony had been inconsistent with some of their prior statements. Counsel proceeded to explain the evidence supporting petitioner's duress defense and why the Commonwealth had failed to prove their case beyond a reasonable doubt.

Id. at Ex. F (alterations in original). As to appellate counsel's performance, the Supreme

Court of Virginia stated the facts as follows.

The record, including the transcript of a May 30, 2013 evidentiary hearing, demonstrates counsel filed a motion to dismiss the indictments because police did not retain a video recording of a witness interview.[2]

The Commonwealth provided petitioner with the police officers' written report on the interview. The trial court ruled the video recording had "questionable exculpatory value," the police officers had adequately preserved the witness's

---

[2] Specifically, the video was of Daryl Wood, who stated that he and Dylan Evans planned on robbing petitioner at eleven that same night. Evans testified that he was not involved in any plans to rob petitioner. Petitioner argues that, because Woods was unavailable to testify at trial, the video recording was exculpatory because it would have been used to impeach Evans and show bias.

statements in a written report, which was comparable to the video recording, and the police had not acted in bad faith by failing to retain the video recording.

*** 

The record, including the trial transcript, demonstrates the victims of the crime, [Dylan] Evans, Jamaal Hines, and John Tarley, identified petitioner as one of the perpetrators who broke into Evan's home, searched for and removed items from the home, and participated in the robbery with an armed gunman. Although petitioner contended he acted under duress, petitioner's testimony and the victims' credibility were issues for the jury to resolve.

Id. (footnote added). The Supreme Court of Virginia dismissed the habeas petition by order dated January 17, 2017. Id.

On April 7, 2017, petitioner filed the instant federal petition, wherein he challenges his convictions on the following grounds.

1. The prosecution's misconduct deprived [petitioner] of a fair trial and violated [petitioner's] constitutional right to due process.

2. The trial court's instructions to the jury on the required elements of the offense were both misleading and confusing making the jury unable to properly make a finding on the facts before it, violating [petitioner's] right to due process.

3(a). Trial counsel was ineffective by making promises to the jury in the opening statement that he failed to deliver throughout his representation.

3(b). Appellate counsel was ineffective in failing to present meritorious issues on appeal.

4(a). The evidence was insufficient as a matter of law to support the convictions of robbery as they related to John Tarley and Dylan Evans.

4(b). The evidence was insufficient as a matter of law to support the conviction of armed statutory burglary because an element of that crime was not met.

4(c). The evidence was insufficient as a matter of law [to support] the convictions of conspiracy as they related to the underlying crimes charged in the indictments.

5. The trial court committed error in allowing the prosecution to destroy exculpatory evidence that prevented [petitioner] from receiving a fair trial.

Dkt. No. 1.

## II. Procedural Bar, Exhaustion, and Default

### A. Claims 1, 2, 4(a), 4(b), and 4(c)

Where a state court has made an express determination of procedural default, the state

court's finding is entitled to a presumption of correctness, provided two foundational

requirements are met. See 28 U.S.C. § 2254(d); Clanton v. Muncy, 845 F.2d 1238, 1241 (4th

Cir. 1988). First, the state court must explicitly rely on the procedural ground to deny petitioner

relief. See Ylst v. Nunnemaker, 501 U.S. 797, 802-03 (1991); Harris v. Reed, 489 U.S. 255, 259

(1989). Second, the state procedural rule used to default petitioner's claim must be an

independent and adequate state ground for denying relief. See Harris, 489 U.S. at 260; Ford v.

Georgia, 498 U.S. 411, 423-24 (1991). When these two requirements have been met, federal

courts may not review the barred claim absent a showing of cause and prejudice or a

fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260.

The state habeas court held that petitioner's Claims 1, 2, 4(a), 4(b), and 4(c) were "barred

because [these] non-jurisdictional issue[s] could have been raised at trial and on direct appeal

and, thus, [are] not cognizable in a petition for a writ of habeas corpus. Slayton v. Parrigan, 215

Va. 27, 29, 205 S.E.2d 680, 682 (1974), cert. denied, 419 U.S. 1108 (1975)." Record No.

160954.

The Fourth Circuit has consistently held that "the procedural default rule set forth in

Slayton constitutes an adequate and independent state law ground for decision." Mu'min v.

Pruett, 125 F.3d 192, 196-97 (4th Cir. 1997). Therefore, the Supreme Court of Virginia's express

finding that <u>Slayton</u> barred review of Claims 1, 2, 4(a), 4(b), and 4(c) also precludes federal review of these claims. <u>Clanton</u>, 845 F.2d at 1241.

## B. Claim 5

Before bringing a federal habeas petition, a state prisoner must first exhaust his claims in the appropriate state court. 28 U.S.C. § 2254(b); <u>Granberry v Greer</u>, 481 U.S. 129 (1987); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982); <u>Preiser v. Rodriguez</u>, 411 U.S. 475 (1973). To comply with the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999). Thus, a petitioner convicted in Virginia first must have presented the same factual and legal claims raised in his federal habeas corpus application to the Supreme Court of Virginia on direct appeal or in a state habeas corpus petition. <u>See, e.g.</u>, <u>Duncan v. Henry</u>, 513 U.S. 364 (1995).

Petitioner argues that Claim 5 was raised in his direct appeal, as acknowledged in his state habeas proceeding. Dkt. No. 20. However, in his petition for appeal to the Supreme Court of Virginia on his direct appeal, petitioner asserts the following two assignments of error.

> 1. The Court of Appeals erred by finding Trial Court did not err in sustaining the objections of the Commonwealth as to the Defendant's testimony regarding statements made to him by the uncharged co-participants, because it was not hearsay and therefore admissible. The Court of Appeals erred in concluding the error was harmless.
>
> 2. The Court of Appeals erred in finding the Trial Court did not err in sustaining the objections of the Commonwealth as to the Defendant's testimony regarding statements made to him by the uncharged co-participants, because the statements fall under the state-of-mind hearsay exception. The Court of Appeals erred in concluding the error was harmless.

Mot. to Dismiss at Ex. C. Nowhere in his petition for appeal on direct appeal does petitioner mention the video recording of Wood. Id.

In addition, the only mention of the video recording of Wood in the state habeas opinion is in relation to petitioner's ineffective assistance of counsel claim regarding appellate counsel. Nowhere in the state habeas opinion is there any mention of an error by the trial court. Therefore, Claim 5 was never presented to the Supreme Court of Virginia for review because petitioner did not present this claim in either his direct appeal in the Supreme Court of Virginia or in his habeas corpus petition filed in the Supreme Court of Virginia.

Although petitioner did not properly present Claim 5 to the Supreme Court of Virginia, it is nonetheless treated as exhausted because petitioner is now precluded from raising it in state court. See Baker v. Corcoran, 220 F.3d 276, 288 (4th Cir. 2000) ("A claim that has not been presented to the highest state court nevertheless may be treated as exhausted if it is clear that the claim would be procedurally barred under state law if the petitioner attempted to present it to the state court."). Specifically, Claim 5 is procedurally defaulted under Virginia Code § 8.01-654(B)(2), which bars successive state habeas applications. The Fourth Circuit has "held on numerous occasions that the procedural default rule set forth in § 8.01-654(B)(2) constitutes an adequate and independent state-law ground for decision." Mackall v. Angelone, 131 F.3d 442, 446 (4th Cir. 1997). Because "the procedural bar that gives rise to exhaustion provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas review of the defaulted claim," Baker, 220 F.3d at 288 (citing Gray v. Netherland, 518 U.S. 152, 161 (1996)), Claim 5 of the instant petition is procedurally defaulted from federal consideration. See Bassette v. Thompson, 915 F.2d 932 (4th Cir. 1990).

## C. Cause and Prejudice

Federal courts may not review barred claims absent a showing of cause and prejudice or a fundamental miscarriage of justice, such as actual innocence. Harris, 489 U.S. at 260. The existence of cause ordinarily turns upon a showing of (1) a denial of effective assistance of counsel, (2) a factor external to the defense which impeded compliance with the state procedural rule, or (3) the novelty of the claim. See Coleman v. Thompson, 501 U.S. 722, 753-54 (1991); Clozza v. Murray, 913 F.2d 1092, 1104 (4th Cir. 1990); Clanton, 845 F.2d at 1241-42. Importantly, a court need not consider the issue of prejudice in the absence of cause. See Kornahrens v. Evatt, 66 F.3d 1350, 1359 (4th Cir. 1995), cert. denied, 517 U.S. 1171 (1996).

As to Claims 1, 2, 4(a), 4(b), and 4(c), petitioner argues cause for his procedural default based on ineffective assistance of counsel. Specifically, petitioner argues that appellate counsel was ineffective for failing to preserve these claims on appeal. However, as discussed in further detail below, petitioner's appellate counsel was not ineffective. Therefore, because petitioner has failed to establish cause or actual innocence, Claims 1, 2, 4(a), 4(b), and 4(c) are defaulted and will be dismissed.

As to Claim 5, petitioner does not argue cause or actual innocence; therefore, Claim 5 is deemed to be simultaneously exhausted and defaulted, and will be dismissed.

## III. Standard of Review

When a state court has addressed the merits of a claim raised in a federal habeas corpus petition, a federal court may not grant the petition on that particular claim unless the state court's adjudication was contrary to, or an unreasonable application of, clearly established federal law, or was based on an unreasonable determination of the facts presented at the trial. 28 U.S.C.

§ 2254(d)(1)-(2). This test erects a "formidable barrier to federal habeas relief" for claims adjudicated on the merits. Burt v. Titlow, 134 S. Ct. 10, 16 (2013). Under this standard, for a state prisoner to obtain habeas relief, he "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011).

The evaluation of whether a state court decision is "contrary to" or "an unreasonable application of" federal law is based upon an independent review of each standard. See Williams v. Taylor, 529 U.S. 362, 412-13 (2000). A state court determination violates the "contrary to" standard if it "arrives at a conclusion opposite to that reached by [the United States Supreme] Court on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." Id. at 413. When reviewing the state court's findings, the federal court is limited to the record before the state court at the time of the decision. See Cullen v. Pinholster, 563 U.S. 170 (2011).

Under the "unreasonable application" clause, the writ should be granted if the federal court finds that the state court "identifies the correct governing legal principle from [the United States Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413. A federal court should review the state court determination with deference; a federal court cannot grant the writ simply because it concludes that the state court incorrectly applied the legal standard. Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Rather, "the federal habeas scheme ... authorizes federal court intervention only when a state-court decision is objectively unreasonable." Id. at 27. A federal court reviewing a habeas

petition "presume[s] the [state] court's factual findings to be sound unless [petitioner] rebuts 'the presumption of correctness by clear and convincing evidence.'" Miller-El v. Dretke, 545 U.S. 231, 240 (2005) (quoting 28 U.S.C. 2254(e)(1)); see, e.g., Lenz v. Washington, 444 F.3d 295, 300-01 (4th Cir. 2006).

## IV. Analysis

To prevail on an ineffective assistance of counsel claim, petitioner must meet the two-pronged test established in Strickland v. Washington, 455 U.S. 668 (1984). Under this test, petitioner must prove both that his attorney's performance was so deficient "that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and that this performance prejudiced the outcome of petitioner's trial. Strickland, 466 U.S. at 687. The two prongs, deficient performance and prejudice, constitute "separate and distinct elements." Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994). Therefore, a court can appropriately dismiss an ineffective assistance of counsel claim on either prong. Strickland, 466 U.S. at 697; see also Bell v. Cone, 535 U.S. 685, 695 (2002) (internal citations omitted) ("Without proof of both deficient performance and prejudice to the defendant, we concluded it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that rendered the result of the proceeding unreliable, and the sentence or conviction should stand"). A court reviewing a claim of ineffective assistance of counsel must presume that counsel acted competently, and should determine the merits of the claim based on the information available to the attorney at the time of the trial. See, e.g., Bell, 535 U.S. at 695; Burket v. Angelone, 208 F.3d 172, 189 (4th Cir. 2000).

## A. Claim 3(a)

Petitioner argues that his trial counsel was ineffective because, during his opening statement to the jury, he made promises about what the evidence would show, including that "the actual perpetrator's intent would become apparent and that [petitioner's] culpability would be diminished." Dkt. No. 1. Petitioner asserts that the trial court warned trial counsel that he would not be able to keep this promised based on pretrial rulings regarding the admissibility of certain evidence. Id. Petitioner alleges that trial counsel did not keep his promise to the jury and then reminded the jury during closing statements by saying "let me address first the – some of the statements I made in opening because I feel that it's usually the case that I come out and promise and you you've [sic] going to hear this and that, and some of the things that I promise that you were going to hear, you didn't." Id. Petitioner claims that this made him loose credibility with the jury. Id.

The state habeas court dismissed this claim of ineffective assistance of counsel because neither the performance nor the prejudice prong of Strickland had been satisfied, finding the following. First, "[p]etitioner [did] not identify any evidence counsel promised in his opening statement to the jury he would present that counsel then failed to present at trial." Record No. 160954. In addition,

> [c]ounsel could reasonably have determined acknowledging any shortcoming in the evidence he had expected to present would bolster his credibility with the jury and "persuade[] it to focus on the relevant issues in the case," particularly petitioner's defense of duress. Yarborough v. Gentry, 540 U.S. 1, 9-10 (2003) (per curiam).

> Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

13

Id.

Petitioner states that the trial court warned trial counsel that any promises made during the opening statement which he was unable to keep would be a detriment to petitioner during a bench conference "made after the judge stopped counsel during his [opening] statement to the jury and in open court while the jury was still seated in the jury box." Dkt. No. 1. This is not an accurate statement. Trial counsel asked for a bench conference prior to starting his opening statement and, while the trial court did warn trial counsel, this was during a bench conference which the jury was not privy to.

In addition, despite trial counsel's statement during his closing that he did not present all the evidence he promised in his opening statement, it is unclear what evidence was not presented, and petitioner does not specify what promise was not kept. While the statements the perpetrators allegedly made to petitioner were not introduced as evidence, petitioner testified that he feared for his safety, as well as the safety of his sister and mother, if he did not do exactly what the perpetrators instructed him to do. Accordingly, as stated by the Supreme Court of Virginia, it is unclear what evidence trial counsel promised in his opening statement that was not presented at trial. Therefore, petitioner has not established that trial counsel was deficient. See Underwood v. Harkleroad, 411 F. App'x 569, 576 (4th Cir. 2011).

As to trial counsel's decision to state, in closing, that "some of the things that I promise that you were going to hear, you didn't," trial counsel is given great discretion in deciding trial strategy.

> The right to effective assistance extends to closing arguments. Nonetheless, counsel has wide latitude in deciding how best to represent a client, and deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage. Closing arguments should sharpen and clarify the issues for resolution by the trier of fact,

but which issues to sharpen and how best to clarify them are questions with many reasonable answers. Indeed, it might sometimes make sense to forgo closing argument altogether. Judicial review of a defense attorney's summation is therefore highly deferential-and doubly deferential when it is conducted through the lens of federal habeas.

Yarborough v. Gentry, 540 U.S. 1, 5–6 (2003) (per curiam) (internal quotations and citations omitted).

The state habeas court's findings as to trial counsel's effectiveness are neither contrary to, nor an unreasonable application of, existing federal law and Supreme Court precedent. They also do not rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference, and Claim 3(a) will be dismissed.

**B. Claim 3(b)**

Petitioner contends, in Claim 3(b), that appellate counsel was ineffective for failing to raise the following claims on direct appeal: (1) the prosecution's failure to disclose exculpatory evidence, and (2) the sufficiency of the evidence as to the criminal charges and the duress defense. Dkt. No. 1. Petitioner argues that "there is a higher probability that these claims would have been meritorious" on appeal as compared to the claims raised on direct appeal. Id.

The state habeas court dismissed this claim, finding that petitioner failed to satisfy both prongs of the Strickland test.

Petitioner has not identified any error in the trial court's ruling[3] which counsel could have raised on appeal. Moreover, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

\*\*\*

---

[3] Regarding the alleged failure to disclose the "exculpatory" evidence.

15

The victims' testimony supported the elements of the offenses, and petitioner has not identified any grounds upon which counsel could have reasonably challenged the sufficiency of the evidence on appeal. Moreover, the selection of issues to address on appeal is left to the discretion of appellate counsel, and counsel need not address every possible issue on appeal. Jones, 463 U.S. at 751-52. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

Record No. 160954 (footnote added).

In applying [the Strickland] test to claims of ineffective assistance of counsel on appeal, however, reviewing courts must accord appellate counsel the presumption that he decided which issues were most likely to afford relief on appeal. Counsel is not obligated to assert all nonfrivolous issues on appeal, as there can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review. Indeed, winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. Although recognizing that notwithstanding Barnes, it is still possible to bring a Strickland claim based on counsel's failure to raise a particular claim on direct appeal, the Supreme Court has recently reiterated that it will be difficult to demonstrate that counsel was incompetent. Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome.

Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (internal quotation marks, citations, and alterations omitted). Petitioner makes the conclusory claim that the issues of the prosecution's failure to disclose exculpatory evidence and the insufficiency of the evidence would have been stronger than the issues actually raised on his direct appeal; however, he does not support this conclusion in any way. In addition, the record does not establish that these issues were "clearly stronger than those presented." Accordingly, petitioner has not overcome the presumption that appellate counsel was effective, and the state habeas court's finding is neither contrary to, nor an unreasonable application of, existing federal law and Supreme Court precedent. It also does not

rest upon an unreasonable finding of fact. Accordingly, the state habeas court's ruling is entitled to deference, and Claim 3(b) will be dismissed.

## V. Evidentiary Hearing

Petitioner has moved for an evidentiary hearing. Dkt. No. 20.

In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. Because the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate.

It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.

Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (internal quotation marks and citations omitted). For the reasons stated above, the record precludes habeas relief. Accordingly, petitioner's motion will be denied.

## VI. Conclusion

Petitioner's Claims 1, 2, 4(a), 4(b), 4(c), and 5 are procedurally barred. As to Claims 3(a) and 3(b), nothing in the state court record indicates that the state court decisions were either contrary to, or an unreasonable application of, clearly established federal law; nor did those decisions involve an unreasonable determination of the facts. Accordingly, this petition will be dismissed with prejudice by an Order to be issued with this Memorandum Opinion.

Entered this ___1st___ day of __March_____ 2018.

Alexandria, Virginia

_____
Anthony J. Trenga /s/
United States District Judge

17

/s/
Anthony J. Trenga
United States District Judge